```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                   EASTERN DISTRICT
```

KURT KOPEK,                           )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )    10 C 5593
                                      )
CITY OF AURORA, et al.,               )
                                      )
          Defendants.                 )

MEMORANDUM OPINION AND ORDER

After the parties' submission, followed by this Court's issuance, of the jointly proposed Final Pretrial Order, each side has tendered a set of motions in limine. That has in turn been followed by responses that have made the motions ripe for decision. This memorandum opinion and order will deal first with defendants' motions, then with those advanced on plaintiff's behalf.

Defendants' Motions in Limine

Defendants' Motion 1 (Dkt. 66) seeks to bar "any evidence which might support the claim that January Kopek was not arrested with probable cause or that her arrest was in any way wrongful." But the motion is more sweeping, because it seeks to bar evidence that information provided by the Secretary of State, on the strength of which defendant Officer Edgar Gallardo ("Gallardo") arrested plaintiff Kurt Kopek's wife January Kopek, was incorrect.

But the undisputed fact that January Kopek is not a plaintiff and is not bringing a false arrest claim is not a basis

for asserting that the Secretary of State's misinformation is not relevant to the claims advanced by Kurt Kopek. Any possible confusion on that matter can readily be dispelled by an appropriate explanatory jury instruction. Hence defendants' Motion 1 is denied.

Defendants' Motion 2 (Dkt. 67) seeks to preclude "any evidence as to January Kopek's feelings, pain and suffering, or injuries she claims to have felt or suffered during the course of the incident at issue in this lawsuit." Although January Kopek's internalized reactions are inadmissible (she is not a co-plaintiff, and this Court perceives no other basis for introduction of such testimony), plaintiff's response appears correct in arguing that her "reactions" in the form of her conduct and statements at the time may well be relevant. Accordingly defendants' Motion 2 is granted to the limited extent described here, but it is denied in the broader sense advanced by defendants, with more particularized rulings to be made at the time of trial.

Defendants' Motion 3 (Dkt. 68) seeks to bar evidence that Officer Gallardo's use of a taser was contrary to applicable General Orders of the Aurora Police Department, while at the same time defense counsel wants to permit testimony by the officer that would support his use of the device. Plaintiff's response accurately portrays that position as pretty much the equivalent

2

of driving the wrong way on a one-way street (see <u>Whren v. United States</u>, 517 U.S. 806, 815 (1996) and <u>Thompson v. City of Chicago</u>, 472 F.3d 444, 455 (7th Cir. 2006), both cited by plaintiff). Testimony going in either direction is inappropriate, because such General Orders are not relevant to the objective reasonableness or unreasonableness of the officer's conduct under the Fourth Amendment.  Defendants' Motion 3 is thus granted in part and denied in part.

Defendants' Motion 4 (Dkt. 69) asks to bar the testimony of Dr. Nadia Khan, to which the plaintiff responds with a sort of "sauce for the goose is sauce for the gander" argument, pointing to plaintiff's Motion 5 that wishes to bar defendants from calling two Aurora Fire Department paramedics who assertedly had not been disclosed as witnesses in violation of Fed. R. Civ. P. 26(a).  In that respect plaintiff's response at 1 accurately "recognizes that both sides make nearly identical legal arguments compelling these witnesses' exclusion at trial."  Both defendants' Motion 4 and plaintiff's Motion 5 are granted.

Finally, defendants' Motion 5 (Dkt. 70) asks to bar the admission of plaintiff's Ex. 24,[1] a bill from Copley Memorial Hospital, because those emergency room expenses were not billed to plaintiff.  But that position is a totally mistaken

---

[1] Defendants mistakenly identify that exhibit as their Ex. 25).

application of the collateral source doctrine, as demonstrated by the very decision cited by defendants. That decision, <u>Wills v. Foster</u>, 229 Ill.2d 393, 413, 892 N.E.2d 1018, 1030 (2003), expressly aligns Illinois with the "reasonable value approach" adopted by the Restatement (Second) of Torts §920(A) cmt. <u>b</u>:

> As set forth above, the Restatement allows all injured plaintiffs to recover the reasonable value of medical expenses and does not distinguish between those who have private insurance, those whose expenses are paid by the government, or those who receive their treatment on a gratuitous basis.

Later <u>Wills</u>, <u>id</u>. at 418-19, 892 N.E.2d at 1033 made the same point in equally forceful terms:

> Under the reasonable-value approach that we have adopted, the fact that the collateral source was the government instead of a private insurance company is a distinction without a difference. All plaintiffs are entitled to seek to recover the full reasonable value of their medical expenses.[2]

Thus defendants' Motion 5 is flat-out denied.

---

[2] [Footnote by this Court] It is extraordinarily disturbing to find defense counsel ignoring the extended in-depth discussion of the collateral source rule by the Illinois Supreme Court in <u>Wills</u>, pointing instead to a misleading snippet that refers to "bills" as though it supported the notion that Kopek's non-receipt of a bill for an amount billed instead to Medicare somehow disqualifies it from his recovery. Throughout the Supreme Court's lengthy discussion it emphasized (1) that the measure of recovery was the reasonable value of the <u>services</u>, not the amount billed, and (2) that liability was established at the time the services were rendered, <u>not</u> when the bills were issued. Thus defense counsel's argument has totally flunked the objective good faith requirement called for by Rule 11(b)--and as later discussion in this opinion reflects, this is not the only instance of such failure.

**<u>Plaintiff's Motions in Limine</u>**

Plaintiff's Motion 1 (Dkt. 71) asks that defendants be barred from introducing evidence referring to the Aurora Police Department's internal investigation. Defendants respond by pointing to paragraphs in the First Amended Complaint ("FAC") that are framed in <u>Monell</u> terms. If that is indeed part of the gravamen of plaintiff's claim, the answer to plaintiff's Motion 1 would be quite different (and more complex) than the straight-out grant of the motion that would apply in the absence of <u>Monell</u> contentions. Plaintiff's Motion 1 is therefore denied at this time, without prejudice to its possible renewal if accompanied by a clarification by plaintiff's counsel that their client is pursuing the contention advanced in those FAC paragraphs.[3]

Plaintiff's Motion 2 (Dkt. 72) seeks to bar the introduction of evidence as to plaintiff's unrelated mental health treatment. Here the potential for unfair prejudice that would trigger the application of Fed. R. Evid. 403 enters the picture. Assuming, as plaintiff's counsel urge, that their client "intends to assert only simple 'garden variety' emotional distress damages," the motion is granted. This issue may have to be revisited at trial, but if plaintiff's counsel and their client cabin such testimony carefully, the exclusionary ruling will remain in effect.

---

[3] No view is expressed here as to the viability of such a contention.

5

Plaintiff's Motion 3 seeks to bar testimony about the General Orders of the Aurora Police Department. This issue has already been ruled upon (see the discussion above as to defendants' Motion 3 [Dkt. 68]). For the reasons stated there, the motion is granted.

Plaintiff's Motion 4 (Dkt. 74) asks that defendants be precluded from offering evidence or argument about their subjective states of mind during their encounter with plaintiff. Although that position is unexceptionable as to plaintiff's Fourth Amendment claim, defendants rightly respond that plaintiff's state law claims bring defendants' state of mind into play as the normal result of allegations charging defendants with willfulness, maliciousness and reckless indifference). So the motion is granted in part and denied in part, imposing a need for counsel to craft careful jury instructions.

Plaintiff's Motion 5 (Dkt. 75) asks that the testimony of the two paramedics referred to earlier in the discussion of defendants' Motion 4 (Dkt. 69) be barred. Defendants' somewhat elaborate attempted justification, based on their threshold initial interrogatory responses listing persons who "may also have discoverable information," is unpersuasive in light of the parties' ensuing discovery, during which there was no hint that the paramedics would play any role in the trial. Hence plaintiff's Motion 5 is granted.

6

This Court cannot go on to the next motion without voicing a sharp criticism of defense counsel for part of their argument on this one. Here are paragraphs 13 through 15 of defendants' response:

> 13. Plaintiff's counsel's actions (at p. 2) in contacting Garcia and Heinke directly is an ethical violation and potentially sanctionable. Plaintiff's counsel has been fully aware since the inception of this lawsuit that this office represents the City of Aurora.
>
> 14. Garcia and Heinke are City of Aurora employees. They are represented by this office. At no time during the course of this litigation did Plaintiff's counsel make any effort to contact our office to schedule a deposition of these two City employees or indicate that they had contacted these two City employees to discuss this matter.
>
> 15.) Plaintiff's counsel's actions are improper, given the fact that Plaintiff's counsel knew this office represents the City of Aurora.

That contention blithely ignores the solidly established principle that counsel's representation of the City of Aurora does <u>not</u> automatically equate to representation of its employees. Defense counsel should be sufficiently cognizant of the Illinois Supreme Court's Rule of Professional Conduct 4.2 and of that court's "control group" test to avoid such an argument. Indeed, advancing that argument regrettably casts a cloud on the ethical conduct of defense counsel, rather than that of plaintiff's counsel.

Plaintiffs' Motion 6 (Dkt. 76) seeks to bar the testimony of

two nonparties--police officer Annika Molitor and civilian Patrick Keller. Although the contact of those persons with plaintiff was limited to transporting him in a Police Department van after the incident sued upon, it is unclear whether plaintiff's testimony will extend to the assertedly unpleasant conditions of that van ride. Accordingly that motion is granted, without prejudice to its renewal at trial if plaintiff's testimony does address that subject.

Plaintiff's Motion 7 (Dkt. 77), which seeks to bar evidence that plaintiff did not pay for his hospital bill, has already been discussed at length (it was the subject of defendants' Motion 5 (Dkt. 70). As indicated in the earlier discussion, defendants' response is dead wrong in citing the <u>Wills</u> case as standing for this proposition:

> However, in order for Plaintiff to recover for such expenses, he must prove that the services have actually been billed to the injured party.

In candor, defense counsel deserves to lose twice on this one--the motion is granted.

Finally, plaintiff's Motion 8 (Dkt. 78) simply recites several areas on which the parties have no dispute. That unopposed motion is granted.

<u>Conclusion</u>

For the reasons stated in this memorandum opinion and order:

    1. Defendants' Motion 4 (Dkt. 69) and plaintiff's

8

    Motions 2 (Dkt. 72), 3 (Dkt. 73), 5 (Dkt. 75), 6 (Dkt. 76), 7 (Dkt. 77) and 8 (Dkt. 78) are granted.

    2. Defendants' Motions 1 (Dkt. 66) and 5 (Dkt. 70) and plaintiff's Motion 1 (Dkt. 71) are denied.

    3. Defendants' Motions 2 (Dkt. 67) and 3 (Dkt. 68) and plaintiff's Motion 4 (Dkt. 74) are granted in part and denied in part.

As stated earlier, one or more of the motions may have to be revisited based on further developments before or at trial.

                             _____
                                Milton I. Shadur
                                Senior United States District Judge

Date:  May 3, 2012